# LOUISVILLE & N. R. CO. v. GILLESPIE.—172 S. W. (2d) 1015.

Middle Section.   March 13, 1943.

Petition for Certiorari denied by Supreme Court, July·3, 1943.

Murrey & Murrey, of Gallatin, and Seay, Stockell & Edwards, of Nashville, for plaintiff in error.

W. P. Puryear, Jr., and R. H. Harsh, both of Gallatin, for defendant in error.

HOWELL, J.  Charles Gillespie, a farmer in Sumner County, Tennessee, brought this suit against the defendant for damages for the death of some cattle caused, as alleged, by having eaten some grass and weeds upon the right-of-way of the defendant which had been sprayed with a poisonous chemical for the purpose of killing it, this having been done in connection with the maintenance of said right-of-way for the safe operation of its trains.  It was averred that this chemical was poisonous to livestock, especially cattle, and further that through the negligence of the defendant, its agents and servants, a gate on this right-of-way was left open or that the defendant was negligent in failing to properly fasten this gate or to have a secure fastener thereon and that as a result of this negligence the plaintiff's cattle were allowed to go through this gate and upon the right-of-way where

they ate the grass and weeds sprayed with this poisonous chemical as a result of which they died.

The defendant denied liability and the case was heard by the Court and a jury and resulted in a judgment for the plaintiff for $475 and the costs.

After proper procedure the defendant has appealed in error to this Court and has filed six assignments of error which will be considered together.

There is little dispute about the material facts. It appears without contradiction that the defendant railroad placed a poisonous chemical on its fenced right-of-way for the purpose of killing vegetation between its rails and for a few feet on each side thereof, and that the plaintiff owned a bull and some cows which got through or over a fence between plaintiff's pasture and the adjoining property of Henry McKoin and found their way over the McKoin property and through a gate on that property in the right-of-way fence of the defendant at a private crossing, placed there by the defendant for McKoin in order to permit him to have access from his land on one side of the railroad to land owned by him on the other side, the railroad running through McKoin's property at this point, and thus entering the right-of-way and eating the poisoned grass or weeds causing their deaths.

It does not appear from the record who left the gate open or that any agent or servant of the defendant knew or had reason to know that this gate was open or insecurely fastened, although there was testimony indicating that such a fastening as was on the gate might be loosened by cattle rubbing against it.

It is not disputed that representatives of the railroad had tacked a sign on this gate warning cattle owners to

be particular as the grass on the right-of-way had been sprayed with the poisonous chemical. Nor is it disputed that the right-of-way fence was in good condition or that the wire gate in same on McKoin's property was secured by a hook made of cable wire.

The statutes of Tennessee do not impose an absolute duty upon railroads to fence their tracks, but do make them liable for the value of stock killed by moving trains if the right-of-way or tracks are not fenced. Section 2651, Code of Tennessee.

Section 2652 is as follows:

"No person, or corporation owning or operating any railroad shall be liable, under the foregoing section, for any damage for the killing or injury of any such live stock, when the track of said railroad is inclosed by a good and lawful fence and good and sufficient cattle guards."

In the case of Jones v. Nashville & K. R. Co., 104 Tenn. 119, 56 S. W. 852, the syllabus is:

"An action cannot be maintained, under Acts 1891, Ch. 101, making railroads liable for the killing of stock on their unfenced track, upon proof that the stock was killed by falling into an unfenced cut. To justify recovery under this Act, the proof must show that the stock was killed by a 'moving train or engine or cars.' "

Therefore the liability in this case, if any, must be predicated upon negligence, and our inquiry is whether or not this record discloses actionable negligence on the part of the defendant company. From a careful reading of the record and examination of authorities we are constrained to the conclusion that there is no liability on the defendant for the death of plaintiff's cattle and the

motion of defendant for a directed verdict in its favor should have been granted.

In the case of Chemical Co. v. Henry, reported in 114 Tenn. 152, 85 S. W. 401, which was an action for the death of a cow which had entered the inclosure of the defendant and eaten some sacks which had contained a substance that the Court said "created violent internal disturbances, causing her death," Mr. Justice Shields said:

"The owners of lands are under no obligation to keep their premises safe for trespassing animals belonging to others, but the owners of animals must at their peril keep them off the lands of others, and whether such lands are inclosed or not is immaterial.

"Judge Thompson, in his work on Negligence, 298, says: 'A landowner is not liable for failure to keep his premises safe for trespassing animals. If cattle stray upon inclosed lands and injure themselves by eating deleterious matter, which has been left there by the landowner without any malicious intent, the landowner is not liable to the owner of the cattle.

"In the case of Knight v. Abert, 6 Pa. 472, 47 Am. Dec. 478, it is said: 'A man must use his property so as not to incommode his neighbor; but the maxim extends only to neighbors who do not interfere with it or enter upon it. He who suffers his cattle to go at large takes upon himself the risk incident to it.' And in Rust v. Low, 6 Mass. [90] 94, it is said: 'It is a general rule of the common law that the owner of cattle is bound at his peril to keep them off the lands of other persons, and he cannot justify or excuse such an entry by showing that the land was unfenced. Fences were designed to keep one's cattle at home, and not to guard against the intru-

sion of those belonging to other people.' Other cases in accord are Hess v. Lupton, 7 Ohio 216, pt. 1; Bush v. Brainard, 1 Cow. [78] 79, 13 Am. Dec. 513; Hughes v. [Hannibal & St. J.] Railroad Co., 66 Mo. 325; McGill v. Compton, 66 Ill. 327; Herold v. Meyers, 20 Iowa 378; Walker v. Herron, 22 Tex. 55.

"Nor were the premises of the chemical company in any sense an attractive nuisance, the maintenance of which made it liable for injuries sustained by trespassing animals."

■ It is insisted for the plaintiff that the defendant is liable to him under the "Attractive Nuisance" theory. We cannot agree with this contention. We cannot see that spraying this grass and weeds with a poisonous chemical resulted in maintaining a condition so attractive to these animals as to constitute an implied invitationo to trespass upon the right-of-way of the defendant, as a result of which they were lured into danger. On the contrary the record shows that the plaintiff testified as follows:

"Q. How did the grass appear where this stuff had been sprayed? A. Killed it, and it was a whitish color.

"Q. Could you tell where the cattle had eaten it? A. Yes, capped it off.

"Q. Mr. Watkins stated to you that it had been sprayed? A. Yes, and where ever it reached it had killed the vegetation."

The record does not show that this grass being killed and of a "whitish color" was any more or less attractive than grass in its natural color.

This record does not disclose how or by whom the gate was left opened or unfastened or that any agent or representative of the defendant had any notice or

knowledge of the plaintiff's cattle having gotten over or through the fence onto McKoin's property where the gate was or that the gate was in such condition that these cattle could get through it and onto the right-of-way.

It results therefore that the first two assignments of error, that there is no evidence to support the verdict of the jury and that the trial Court should have directed a verdict in favor of the defendant are sustained.

It is not necessary to consider the remaining assignments as to whether or not the verdict was excessive or in connection with the charge of the Court.

The Lower Court is reversed and the suit dismissed at the cost of the plaintiff.

Reversed and dismissed.

Felts and Hickerson, JJ., concur.